May it please the Court, my name is Erica Anderson and I represent the appellant, in this case Jeanne Bisconte. I first want to thank the Court for granting oral argument on this important issue for traveling to New Mexico and also for the short recess. Ms. Bisconte started working with Sandia Labs as a graduate student intern in 2002. She consistently received positive employment evaluations, she was promoted throughout her Jeanne Bisconte's employment ended in March of 2019. Unfortunately during her tenure at Sandia, Ms. Bisconte experienced gender discrimination and retaliation. She was not paid the same compensation as her male counterparts and she brought many complaints to the Human Resource Department at Sandia. She also made several complaints to the New Mexico Human Rights Commission as well as the EEOC. Just briefly, I don't know if I reserved my two minutes for rebuttal, but I did want to do that as well. One of the complaints to the New Mexico Human Rights Commission did result in a probable cause determination, which is not automatic. At the time, at that time, Sandia for the first time raised the federal enclave doctrine and the parties briefed the issue. As the court knows, a federal enclave is created when a state cedes jurisdiction over land within its borders to the federal government and Congress accepts that session. It is not meant to be a procedural bar. Kirkland Air Force Base, where Sandia is located, was established as a federal enclave in 1954 and this is not While working at Sandia, Ms. Bisconte, however, did not work at Kirkland Air Force Base. She either worked remotely or she worked at a building called Innovative Parkway Office Center, also known as IPOC, which was also located outside of the federal enclave. The New Mexico Human Rights Commission determined after the briefing of the parties and we submitted a map where the IPOC building was located and they determined that the federal enclave doctrine did not apply. As a result, we proceeded and filed our lawsuit in state court alleging state claims for gender discrimination and retaliation pursuant to the New Mexico Human Rights Act, violation of the New Mexico Fair Pay for Women Act, and breach of an implied contract. Sandia then removed the case to federal court and filed a motion to dismiss. This is a common course of action for Sandia. The cases that have been cited in our briefs as well as in the court's decision below show that Sandia often does do that. In fact, Mr. Kaur has listed on many of those cases along with the Rody Law Firm and the federal doctrine is often raised at that time. As the court knows in employment cases, there are strict and very short deadlines in the case, so oftentimes these deadlines pass while the federal enclave doctrine issues are addressed. In this case, we filed a motion to stay once the case was remanded. We also filed a motion to remand the case back to state court. The court denied our motion to stay and then gave the parties an opportunity to provide additional materials regarding the federal enclave doctrine. This also, if you read the case law, is something that the district courts do in many of these cases. The court then granted Sandia's motion to dismiss, finding that the federal enclave doctrine applied. We filed this appeal because we believe the court erred in its determination that the federal enclave did apply. In the court's decision, the court basically noted that courts generally look to, one, the place where the wrong occurred, and two, in wrongful termination or compensation employment cases, the place where the adverse employment decisions were made. Again, the court's decision to dismiss the case law is pretty clear. If an employee works within the confines of the federal enclave doctrine, the federal enclave doctrine applies. That's very consistent throughout the case law. In this case, Ms. Bisconti did not work within the federal enclave because she worked remotely as well as at the IPOC building, and therefore the court would look at other factors. In this case, the court looked at other facts that were presented by Sandia and essentially determined that the computer servers plaintiffs worked on were located at Kirtland Air Force Base, and these are the facts that the court considered in determining that the federal enclave applied. It further said that Sandia's pay policies were made by Sandia executives on Kirtland Air Force Base. It further said the compensation policies were administered by a department located on Kirtland Air Force Base. The leadership team responsible for policy-level compensation decisions met and made decisions on Kirtland Air Force Base. Plaintiffs submitted her request to separate from Sandia employment through sickness, absence, exhaustion to a medical clinic that was located on the Kirtland Air Force Base, and plaintiff resigned or was terminated in a meeting on Kirtland Air Force Base with the medical director for Sandia's occupation health clinic on Kirtland Air Force Base. And the court specifically said in its opinion, in analyzing these facts, that all the relevant adverse employment decisions, actions, or policies occurred or were performed on Kirtland Air Force Base, and they went into these factors. When we submitted our additional materials to the court, we submitted a form that showed that Ms. Asante had turned in her badge, and this was dated July 9, 2018, and this happened at 10-24. This is located in the appendix 0112. This happened July 9, 2018. We also submitted, it was exhibited to our additional materials, and this is at appendix page 0113, and this was a document called, it was basically an exit interview with Ms. Asante's supervisor, John... Just stop me there. Do you have a list of actions that took place on the Air Force Base? Do you challenge that those did not, are you saying they did not have adverse employment or are you saying that that's irrelevant because we should only look at where your client was? Well, that's a great question because the, some of the conclusions by the court are just wrong. Basically, whether a plaintiff did not resign or was not terminated in a meeting on Kirtland Air Force Base with the medical director. There was an affidavit that was submitted, and that was by a declaration of Ray Lewis. This is appendix 0034, and he was not the medical director. He was a medical case manager. This was actually a meeting that occurred on July 2nd, 2018. This was the first time that Mr. Lewis, according to the affidavit and my client, had even met Ms. Asante. This was a meeting where she submitted a form to extend her benefits. She basically was going to extend her benefits through March of 2019. She was going to continue to get paid. Okay, but can I, so there are, you're alleging, or your argument is that there may be some mistakes in the findings, but I guess I'm asking, does that make a difference to your case? It does because I think the court did not fully rely on some of the documents that we submitted, which indicated that Ms. Asante's security clearance stopped on July 9th, 2018. That is something that, or 2018, I'm sorry, that's something that is consistent with the termination process. So that happened at IPOC. That happened outside of the federal enclave jurisdiction. So essentially just turning in her benefits form on Kirkland Air Force Base was not a reason to determine the federal enclave document, but that was not an adverse action. I'd like to have you focus on the district courts, what it found as far as what the options were in terms of, you know, whether we look to the place where the harm occurred, he said that's one option, or you look to the place where the adverse employment decisions were made. That's what the district court said. Assuming that to be true, why do any of these facts matter if the adverse employment decisions were actually made within the confines of the federal enclave? Do you see what I'm saying? I do see what you're saying, and we're saying that the harm did not occur in the federal enclave because she... Let's just talk first about the place where the adverse employment decisions were made. What's your argument about whether, first of all, that should be the standard or the question, and then, assuming it is the question, why weren't the decisions here made? We agree that that is a factor, and that is a factor to consider. Is it a factor, or can it be decisive? It can be decisive as well. Yes, it can be decisive as well, where the... Where the decisions were made. Well, or where the adverse employment action occurred, which our argument is that it occurred at IPOC, because that is when she turned in, her security terminated. That's also when she turned in her badge. Well, adverse decisions here, in terms of, let's talk about that. What are, what adverse decisions were made, not where she turned in her badge or where her meeting was held, but what adverse decisions were made that resulted in your client's injury? Well... What were the various decisions? The various decisions were not paying her as much, as well, so that part... Right, and where would that decision have been made, or the continuing decision not to pay her as much? And where, the court said that, you know, the leadership team made decisions at the Kirkland, which was on the federal enclave. They said that the policy compensation... Right, and is that, and do you challenge that? Not necessarily, but we don't believe that the adverse, when her actual employment ended, that did not happen. Okay, well, I'm asking right now, just focusing on where the decisions were made that you consider to be adverse. Are there other claims? Well, another decision is, you know... Because you've got the equal pay issue, what other issues? And ending her employment. Ending her employment. I mean, that's often an adverse employment action. Right. And oftentimes, you have to have a reduction in pay for some kind of decrease in...  decision. And that would have been, that happened at IPOC with her supervisor. No, that's where she learned of it, but who, where would the decision have been made? I mean, the communication with her supervisor... Where did her supervisor work? You're talking about two different things as far as I can see. I mean, you're talking about when she was notified of the decision, but I'm trying to focus right now on who made the decision, the decisions that you're challenging as adverse. Right. And when and where those were made. Well, what I'm saying is that her supervisor, you know, they reviewed the letter of resignation and or termination. That occurred at IPOC. But they'd already made the decision. I'm trying to isolate the decision itself. Where were the adverse decisions made that she's, that her cause of action depends upon? And I'm not sure where, when the... She has to have an adverse decision to be, to be here. Right, right. And I'm saying that when they discussed the adverse decision... I understand. I understand when you're saying that it was made, but you know, I haven't had, we didn't get to discovery. I didn't get to, we didn't get to, you know, ask. The district court didn't make any findings about who made like the decision not to pay her, what she... The district court found that the compensation policy deciders were located at Kirtland Air Force Base. Right, right. And that the leadership team, while they might not have been located there, they made their, they met there and they made their decisions there. And so you win? Are you arguing for a per se rule that if factor X, Y, or Z occurs, then the employee wins? I'm saying that the court erred in its analysis because it did not consider, and it actually has a paragraph that said it wasn't considering, you know, when to turn a badge and exit in or view, didn't give any weight to the security termination statement. And if it had, then all of these things that you find fault with, then the employee would have to win. Yes. So you are arguing, at least on your facts, that's per se, you win. We're saying that under those factors, yes, that those decisions, that happened off the federal enclave and that we would win. You know, the court also did not... Well, what if she just worked off the federal enclave and the termination or whatever else occurred on the enclave, would you still say you won? In other words, is it enough that she just worked off of the enclave? I don't think it is enough under the case law because when, I think it's enough if she worked within the enclave, the courts tend to only look at that. Okay. However, if she's working outside of the enclave, then we have to look at these other factors and where the harm occurred as well as where any adverse decisions were made. Okay. You're over time, so let me just ask panelists if they have any questions, and if so, we'll continue. I think so. All right. Thank you very much, Your Honor. Thank you. Good morning. May it please the Court. My name is Justin Gore representing the Avalese. The question presented in this appeal is whether the federal enclave doctrine applies to Ms. Visconti's employment claims against Sandia and to Sandia managers. There are no disputed issues of fact in this case. We'll concede that the district court applied the incorrect title to an individual medical case manager at Sandia. Counsel, could I get you to put your mobile closer? Yes, absolutely. Thank you. Thank you. Better? Sandia's headquarters and the bulk of its operations are located on Perlin Air Force Base, which has been a federal enclave since at least 1954, before the state of New Mexico recognized the causes of action that are at issue in this claim. And we don't dispute that Ms. Visconti primarily performed her work off of the federal enclave. As she states in her complaint, Sandia National Laboratories is a government-owned, contractor-operated facility. It's designated by Congress as a national security laboratory in 50 U.S.C. section 2471. And it's managed and operated by National Technology and Engineering Solutions of Sandia under a contract with the United States Department of Energy's National Nuclear Security Administration. Appellant concedes that it's not enough to establish state jurisdiction just because she performed her work from the enclave. Let me flip that and ask you, what would it take for an employee to be able to proceed despite federal enclave doctrine? What would you say is satisfactory? We agree with what we believe is a clear, simple rule articulated by Judge Browning in the Kennecott decision in the District of New Mexico where he essentially says it's sufficient if the employee works on the enclave to apply the federal enclave doctrine or if there is an employer like Sandia that has the bulk of its operations on the enclave and is headquartered on the enclave. And we believe that headquarters is important. Sandia is an organization. Okay, but what isn't sufficient? Again, if there is really no nexus to the enclave, no connection. So are you arguing for a per se rule that if you're employed by an entity that is headed on a federal enclave, you lose? In an employment claim, yes. So really, you're saying it doesn't matter where the decisions were made? I mean, pretty much the analysis stops there in your view? There's no other factor that comes into play? Again, we agree with Judge Browning in the Kennecott case that it would just be too difficult to try to identify, again, especially in a case like this one that's talking about years of interrelated complex decisions by multiple individuals and not only about the appellant's claim but also some unknown number of unidentified comparators. We could have jurisdictional discovery that dwarfed the substantive case if we're looking at where each individual decision-maker is sitting when each individual decision was made. But we believe that's unnecessary because, again, this case is about a corporate action, an action by the company. The company is located on the federal enclave. Well, but the court said in Boulder County. I think it was a Boulder County case. But the doctrine requires, or generally at least requires, that all pertinent events take place on the federal enclave, all pertinent events. She works outside the federal enclave. And certainly, some events pertinent to her termination, at least, took place outside the enclave. And her physical presence, her work, was outside the enclave. How can you say that all events took place within the enclave, all pertinent events? So I think we can. I do think it's interesting to trace that language, that all pertinent events. I believe that comes from a case in the Northern District of California. I think it's the Industrial Light and Magic case. And it's interesting if you read that case. It's Judge Alsop, I believe, who is sort of just kind of flabbergasted that the federal enclave doctrine exists. So he sort of says, but in this case, everything happened. All the pertinent events happened on the federal enclave, and so I have to dismiss it. I don't think you can read that as establishing a rule. I don't think that was the intent there. Well, you can read it as saying, depending on the type of case, and there's different types of cases, what are the pertinent events? Well, in an employment case, what are the pertinent events? I agree. In a case like this one that's about pay and promotion decisions. And termination. Termination. It's about her work. It's about terminating her employment. It's about terminating her employment. Why doesn't that have something to do with where she was employed, where she physically worked, and where she was outside the base? I think you can, again, look to those cases that say you look at where the harm occurred. Right. Why didn't the harm occur where she lost her job, which is essentially sitting wherever in her home or wherever she worked. Remotely. Right. I think, again, there are cases that show remote workers, that doesn't avoid the enclave. And what case are you referring to specifically? I believe it's mentioned in the Kennecott case. I think it's also Taylor versus Lawton. What were the facts of the Kennecott case? The Kennecott case was actually a putative class action case asserted nationwide on behalf of employees nationwide. And so the court looked pretty exhaustively. It certainly noted that, again, the three named plaintiffs at the time all worked on the enclave. Right. So can you point me to a case? I didn't see anything quite exactly like this where an individual worked entirely remotely. Entirely remotely. And is outside the enclave. And a court nevertheless applied the enclave doctrine. I don't believe that there is one. I don't think there has been. We haven't found one. I'll note that in the district court decision in the Allison versus Bowen case that this court eventually decided, the plaintiff at the time in the district court did allege, did assert that he performed some of his work off of the enclave. So what do we look to to decide what the pertinent events are in an employment case? There was some suggestion that we should look to the law of New Mexico, but I think the court said, well, that doesn't make much sense when we're talking about the federal enclave doctrine. I agree. We would agree with that. What would the law of New Mexico say in an employment case where the cause of action arose? So New Mexico, the appellant here cites the Terraza case that applies the lex loci delicti application. Applies to the injury? Yes. Right. The way the court described that in that case is, where was the last act necessary to complete the injury? And so if this court did look to that in this case, it presumably would look at the termination. Which was where? On the face of the complaint, that happened on the enclave at Sandia's medical clinic when Sandia brought in information from her physician saying she's medically unable to work and requested to be separated through that sickness absence. Even though there may sound like there may be some evidence otherwise. Absolutely. And again, we don't dispute that she turned in her badge off of the enclave or signed some exit paperwork, but those aren't material to the decision. So you think even if we were to apply lex loci delicti, we would still, the place of the injury based on the face of the complaint occurred on the base? In this case, yes. But again, we would assert that in any way, if the action being challenged is a corporate action, she's seeking liability from the company, you look at where the company is located. And so you can find, again, without... And you're, again, you're, tell me again, was the Kennecott, was that the only case that you cited for that authority? I mean, for the concept of if there's, you know, it's a place where the corporation is or is located? Yes, I believe there's some language to that effect as well in the Smeltzer case, Smeltzer versus Sandia. And what was that about? Again, very, very similar, that was an employment law case, I believe it was a disability case. An individual? An individual asserting claims against Sandia. But they were working remotely? They were not, no. Right, so it doesn't really pertain to her situation. Right, again... I'm trying to figure out where you're coming up with your seemingly black and white, you know, here and it doesn't seem like it's, we can derive it from anything. Again, I think we can derive it from, right, from Judge Browning's analysis, who's trying to find what is a clear rule we can apply to, right, quickly reach a result, you know, again, avoid the potential for, again, jurisdictional discovery that could dwarf the case. If you can look at, is this about an employment practice or policy or process, then who was the employer and where was the employer located? Or is it about where the injury occurred and where did that happen? Again, that could be, and certainly that is, right, where the harm occurred, there are a number of cases that say that, but again, we would say that is where, right, where those policies are established and so you look at, we believe it leads to the same result. And it's just an enclave for state claims that came after the creation. The federal claims were available. That's correct, absolutely, Your Honor. It was very clear, right, from appellant's opening brief and reply brief that there were federal claims here available. This court in the Allison case noted, right, there's no fundamental unfairness in only applying pre-1954 New Mexico law or federal law. There are claims available. Appellant in this case never pursued those, which, again, gets to the second and third issues in this appeal, which ultimately turned on the fact that appellant, right, made no attempts to assert any federal claims. And I will cede the remainder of my time unless there's any questions. All right, thank you. Ms. Anderson, you used up all your time, but we're very generous people, so you can have two minutes for rebuttal, but I'm going to hold you to it. Okay. Thank you, Your Honor. Just briefly, a couple things. To clarify the Kennecott versus Sandia Corporation decision, and that was a 2018 decision by Judge Browning, and the court used a dual-factor approach under which the enclave doctrine should apply if either the employer's work or the employer's relevant decision-making was located on the enclave. So it was a dual approach. It wasn't just a black-and-white approach. I think here, you know, it is significant that one of the factors the court relied on was that plaintiff resigned or was terminated in the meeting with the medical provider. It seems that that is the position of Sandia, that that's when the termination started or the separation of employment, but that doesn't even make sense that Ms. Pisconti would submit her, that termination or separation would be even, the decision would be made there because this is a medical case manager. It's not her employer. It's not her manager. It's a medical case manager that she saw for the first time. But wasn't the writing on the wall? Wasn't that the agreement? You can have your leave until it runs out? That was basically she couldn't work at Sandy anymore because of the medical disability, but that was when she met with the doctor to inform them of that and also to get the benefits extended. But then the actual termination and paperwork and actions actually happened outside of the federal enclave at IPOC. You know, federal claims, yes, were available. However, you know, the New Mexico Human Rights Division did find that the federal enclave did not apply, and so relying on that decision and exhausting the state, you know, exhausting our administrative remedies at the state level, we brought state claims on as, you know, strategic for our strategic reasons. And, you know, the court also did not find significance in the New Mexico Human Rights Division's decision that the federal enclave doctrine did not apply. You can wrap up that point, but you're over time. Okay. You know, which was significant, even though it's not binding. It shows that it wasn't black and white, and it is a decision that we relied on in bringing our state claims. Thank you, Your Honor. And thank you to the courts. Thank you both for your helpful arguments. The case is submitted.